GALLETTI, Appellant,

v.

BURNS INTERNATIONAL et al., Appellees.

[Cite as *Galletti v. Burns Internatl.* (1991), 74 Ohio App.3d 680.]

Court of Appeals of Ohio,
Lake County.

No. 89–L–14–167.

Decided July 1, 1991.

*Donna Taylor–Kolis,* for appellant.

*Lee I. Fisher,* Attorney General, and *Steven L. Sterner,* Assistant Attorney General, for appellees, Bureau of Workers' Compensation and Industrial Commission of Ohio.

---

JOSEPH E. MAHONEY, Judge.

This appeal is from the trial court entry directing a verdict in favor of appellee Burns International. Appellant, Adam Galletti, suffered an acute myocardial infarction while performing his duties as a security guard for appellee on July 3, 1986. Appellant's workers' compensation claim was denied by the hearing officer on June 12, 1987 and again by the regional board of review on December 1, 1987. The decision, that appellant did not suffer an injury arising out of or in the course of his employment, was affirmed by the Industrial Commission of Ohio on January 28, 1988.

On February 23, 1988, appellant filed his notice of appeal in the common pleas court, and a jury trial was held on September 25, 1989. At trial, evidence was presented that appellant was working for appellee at the Perry

Nuclear Power Plant. When he began working for appellee, appellant informed the company that he was taking medication for angina. The night that appellant suffered the acute myocardial infarction, he was assigned to the security post known as "detect." This post required the security guard to alternately walk the grounds for two two-hour periods during an eight-hour shift.

Evidence was presented as to the distances required to be covered, the buildings inspected, and the numerous flights of stairs which had to be climbed during the walking detect. This detect post was normally rotated among the security personnel so that guards only were assigned the detect post once every two weeks. In June 1986, the security staff was reduced, and on July 1 and July 2, 1986, appellant was required to work the detect post two consecutive days.

At the end of the second night, appellant suffered the acute myocardial infarction and subsequently began the underlying proceedings.

At trial, appellant presented expert testimony on the causal relationship between appellant's work and the injury he suffered. At the end of appellant's evidence, appellee moved for a directed verdict based on appellant's failure to present sufficient expert testimony that appellant's work was the direct and proximate cause of his injury. The trial court granted the directed verdict on the grounds that the medical testimony was uncertain as to the proximate cause.

This decision was based on two grounds. First, the expert stated "I think" when giving his opinion on the proximate cause issue. Second, the expert did not know if the heart attack would have occurred if appellant had not worked the second detect post. It is from the trial court's directed verdict that appellant now appeals, raising the following assignment of error:

"The trial court erred in granting defendants' motion for a directed verdict at the close of plaintiff's evidence."

The only issue brought before this court by the appeal in this case is the propriety of the trial court's directing a verdict based on the insufficiency of the evidence on the issue of proximate cause.

" * * * When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Civ.R. 50(A)(4).

This court dealt with a similar problem concerning the language used by an expert in conveying his opinion in *Pappas v. Cleveland Elec. Illum. Co.* (Dec. 9, 1983), Lake App. No. 9–227, unreported, 1983 WL 6004, which, at pages 6 and 7 of the opinion, states:

"Past cases have uniformly held that in order for the claimant's medical testimony to create a question of proximate cause for the jury, the testimony must establish a probability, not a mere possibility, of such a causal connection. *Drakulich v. Industrial Commission* (1940), 137 Ohio St. 82 [17 O.O. 398, 27 N.E.2d 932]; *Pfister v. Industrial Commission* (1942), 139 Ohio St. 399 [22 O.O. 465, 40 N.E.2d 671]. Courts have distinguished legally sufficient testimony from insufficient testimony based on the precise language used by the medical expert. Thus, when experts have stated that an employee's injury 'could be', 'could very well be', or 'could possibly be' causally related to an incident at work, the medical testimony has been held insufficient to create a jury question on proximate cause. * * *

"* * *

"However, *Swanton v. Stringer* (1975), 42 Ohio St.2d 356 [71 O.O.2d 325, 328 N.E.2d 794], liberalized the necessity to use legally precise language by holding that when a doctor stated that a certain work incident was 'the straw that broke the camel's back', the claimant had presented sufficient evidence to prove proximate cause.

"The *Swanton* court stated:

" 'That testimony, although *not couched in legally precise language, does support a finding* by the trial court that the incident complained of proximately caused the aggravation of the pre-existing disease * * *.' (Emphasis added). Supra at 360."

In *Pappas*, the language questioned was "I definitely believe * * * "; in the case *sub judice*, the language found insufficient by the trial court was "I think it was definitely due to the stress that he experienced at work." This court does not agree that the use of the phrase "I think" so conditions the testimony relating to proximate cause as to render it insufficient to create a question for the jury. Therefore, the court erred in granting the directed verdict based on the use of the phrase "I think."

The trial court also expressed concern that the expert did not know whether appellant's injury would have occurred if appellant had not worked the additional shift.

The question posed does not ask if the work was a direct and proximate cause of the injury. Instead, the question asks the doctor to surmise whether the injury would have occurred without the work. Intuitively, this seems

correct; however, medicine is not an exact science from which the converse, or a corollary proposition, can easily be deduced. As a result, this cross-examination of appellant's medical expert did not probe causation but "merely aroused speculation." *Westerviller v. Lennox Industries, Inc.* (Apr. 15, 1986), Franklin App. No. 85AP–377, unreported, 1986 WL 4651.

Appellant's assignment of error has merit.

For the reasons stated herein, the judgment of the trial court is reversed and the within cause is remanded to said court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CHRISTLEY, P.J., concurs with concurring opinion.

FORD, J., concurs with concurring opinion.

CHRISTLEY, Presiding Judge, concurring.

I concur in the majority opinion with the following thoughts: Like the majority, I am not disturbed by the repeated use of the phrase "I think * * *." Read in context, it does not convey a sense of speculation. However, the other parts of the doctor's testimony which were objected to seem to be more akin to "possibilities" than "probabilities."

Nevertheless, this was not a situation where the testimony of the appellant was positively contradicted by the establishment of opposing physical facts. *McDonald v. Ford Motor Co.* (1975), 42 Ohio St.2d 8, 71 O.O.2d 4, 326 N.E.2d 252. Once an expert properly states his professional opinion to a properly formed question as to "probability," he or she has established a prima facie case as a matter of law. Erosion of that opinion due to effective cross-examination does not negate that opinion; rather, it only goes to weight and credibility. Thus, it would not usually be a suitable instance for application of a directed verdict. The exception would be when the expert actually recants the opinion on cross. In this instance, the doctor's subsequent testimony simply diluted his previous statements rather than directly contradicting them.

Thus, I concur with the majority's decision to reverse.

FORD, Judge, concurring.

While concurring with the majority opinion and concurring opinion of Judge Christley, this writer feels the following analysis is merited.

In *Swanton v. Stringer* (1975), 42 Ohio St.2d 356, 71 O.O.2d 325, 328 N.E.2d 794, the Ohio Supreme Court addressed the sufficiency of language used to establish a causal relationship between exposure to dust and debris and the aggravation of a pre-existing condition. In examining the medical testimony given, the court noted that in order to create a question of proximate cause, it

was *not* necessary for the testifying expert to employ *"legally precise language."* *Id.* at 360, 71 O.O.2d at 327, 328 N.E.2d at 798. Although never citing the *Swanton* decision, the Supreme Court clarified *Swanton* in *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28 OBR 429, 504 N.E.2d 44, by noting that opinions expressed by medical experts must be couched in terms of *probabilities*—further noting that "[o]pinions expressed with a lesser degree of certainty must be excluded as *speculative."* (Emphasis added.) *Id.* at 369, 28 OBR at 430, 504 N.E.2d at 46.

In *Shumaker,* the plaintiff's medical expert offered his opinion using the following verbiage: " * * * 'with a reasonable degree of probability, it is likely that this combination of those three chemicals *could* have caused the cancer.' " *Id.* at 368–369, 28 OBR at 430, 504 N.E.2d at 46. Holding that this expression of opinion was insufficient proof of proximate cause to permit the jury to consider the testimony, the court concluded although the medical expert stated that "he was testifying to a 'reasonable degree of probability,' he modified his statement by the word 'could.' Thus, he was not testifying that the cancer was causally linked to the exposure, but only that *such a causal connection could, but not necessarily did, exist."* (Emphasis added.) *Id.* at 369, 28 OBR at 431, 504 N.E.2d at 47.

*Swanton* and *Shumaker* should be read as providing the following rule of law: While it is not necessary to constrain medical experts to the use of legally precise language, it is nevertheless imperative to require their testimony to affirmatively express more than a possibility. It is necessary to clearly reach the crest of probability. Thus, their diction is to be couched in verbiage consistent with reasonable probability or certainty. Any parenthetical or descriptive language that creates a modification or equivocation of that standard runs afoul of *Shumaker.* However, this writer does not interpret *Shumaker* to mean that only one set of magical, operative diction may comply with this requirement. Common sense and usual meanings may be applied to determine if given words employed in a case achieve that standard. Consequently, statements such as "I think it was definitely due to the stress that he experienced at work" constitute sufficient certainty to establish a question of fact for the jury.

Appellees point to several subsequent statements made by the expert where he used the word "could." This does not destroy the certainty of the previous statements of probability. Unlike *Shumaker,* where the expert never expressed an opinion rising above the level of possibility or speculation, here the medical expert did express an opinion of probable causal relation. Subsequent recantations of certainty on cross-examination do not destroy the admissibility

of the testimony, but act as impeachments of the expert's credibility. Therefore, I join in the reversal.