73 F.3d 361
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 FALLS STEEL TUBE & MANUFACTURING COMPANY, Plaintiff-Appellee,
v.
TRUMARK, INC., Defendant-Appellant.
 No. 94-3981.
 United States Court of Appeals, Sixth Circuit.
 Dec. 18, 1995.
 
 Before: MARTIN and NORRIS, Circuit Judges, and CHURCHILL, District Court Judge.*
 OPINION
 PER CURIAM.
 
 
 1
 This dispute arose when a joint venture agreement between Trumark, Inc., and Falls Steel Tube & Manufacturing Company ("Falls Steel") went awry. As a result of this falling out, Falls Steel sued Trumark for breach of their agreement and obtained a jury verdict of $574,560. On appeal, Trumark contends that it was entitled to judgment as a matter of law because Falls Steel failed to produce legally sufficient evidence of its lost profits. Trumark also takes issue with the district court's decision to grant partial summary judgment in favor of Falls Steel concerning the terms of the agreement. Finally, the company objects to rulings made by the district court during the trial.
 
 
 2
 After careful review of the record, we now affirm the jury's verdict.
 
 I.
 
 3
 Falls Steel was an Ohio corporation that produced metal tubing used in automotive exhaust systems. In the late 1980s, its principal customer, Chrysler Motors Corporation, embarked on a program to reduce the number of suppliers from which it purchased components. As a result of this policy, Chrysler advised Falls Steel that it would eventually cease to buy its products directly. However, Chrysler suggested that Falls Steel contact Trumark, a Michigan corporation that stamped and assembled already-manufactured metal products, with an eye to becoming an "indirect" supplier.
 
 
 4
 In the fall of 1990, Trumark and Falls Steel began discussing a joint venture agreement. These negotiations resulted in a letter agreement (the "contract"), dated December 10, which included the following terms:
 
 
 5
 It is the intention of the parties that this joint venture hereafter be the exclusive means through which the parties sell tubular products to Chrysler, and that hereafter neither party will independently sell original equipment tubular products to Chrysler except through the joint venture.
 
 
 6
 TM [Trumark] will directly contract with Chrysler as prime contractor to supply Chrysler with exhaust tubular products for various part numbers to be determined. TM will purchase all tubing required for such production from FST [Falls Steel] at prices to be negotiated. TM will issue a purchase order to FST for such purchases.
 
 
 7
 This contract was to be in effect until September 30, 1995. Despite its exclusivity provision, Falls Steel continued to satisfy existing contracts with Chrysler but did not solicit any new business. Chrysler terminated Falls Steel as a direct supplier on December 7, 1992.
 
 
 8
 On September 3, 1992, Trumark sent a letter to Falls Steel, indicating its intention to terminate the contract because of "quality concerns." The cancellation took effect on December 31, 1992. In early 1993, Falls Steel ceased operation as a going concern.
 
 II.
 A. Evidence of Lost Profits
 
 9
 Trumark contends that Falls Steel failed to present legally sufficient evidence of the damages it suffered in the form of lost profits. The company raised this issue to the district court in two contexts: first, in a motion for a directed verdict; second in a motion for judgment as a matter of law. Both motions were denied.
 
 
 10
 We review de novo a district court's denial of a motion for judgment as a matter of law. Tobin v. Astra Pharmaceutical Prods., Inc., 993 F.2d 528, 540 (6th Cir.), cert. denied, 114 S.Ct. 304 (1993). In diversity cases, a federal court applies the law of the forum state to determine whether to grant or to deny a motion for a directed verdict or a motion for judgment as a matter of law. Id.
 
 
 11
 In Ohio, the same standard applies to both motions. Porter v. Lima Memorial Hosp., 995 F.2d 629, 634-35 (6th Cir.1993) (citing Chemical Bank v. Neman, 52 Ohio St.3d 204, 206-07, 556 N.E.2d 490, 493 (1990)). The Ohio Rules of Civil Procedure provide the following guidance:
 
 
 12
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
 
 
 13
 Ohio R.Civ.P. 50(A)(4). In deciding the motion, the trial judge must not weigh the evidence or assess the credibility of witnesses. Porter, 995 F.2d at 635 (citing Cardinal v. Family Foot Care Ctrs., Inc., 40 Ohio App.3d 181, 183, 532 N.E.2d 162, 164-65 (1987)).
 
 
 14
 The Ohio Supreme Court has established the following rule with respect to lost profits:
 
 
 15
 Lost profits may be recovered by the plaintiff in a breach of contract action if: (1) profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits is the probable result of the breach of contract, and (3) the profits are not remote and speculative and may be shown with reasonable certainty.
 
 
 16
 Charles R. Combs Trucking, Inc. v. Int'l Harvester Co., 12 Ohio St.3d 241, 241, 466 N.E.2d 883, 885 (1984) (syllabus). Evidence of lost profits must be reasonable, but it need not be specific. Id. at 244, 466 N.E.2d at 887. Ohio courts require lost profits to be "substantiated by calculations based on facts available or in evidence, otherwise they are speculative and uncertain." Rhodes v. Rhodes Indus., Inc., 71 Ohio App.3d 797, 809, 595 N.E.2d 441, 448 (1991).
 
 
 17
 In the case before us, Falls Steel relied largely upon the expert testimony of James Wilcosky, a certified public accountant with Coopers & Lybrand, to establish lost profits. Wilcosky testified that he examined the company's financial statements, including tax returns, for the fiscal years 1989 through 1992, as well as the quarter ending November 30, 1992. He also conducted interviews with the company's bookkeeper. As a result of these investigations, Wilcosky concluded that Falls Steel lost profits in the amount of $1,493,000 as the direct result of Trumark's termination of the contract.
 
 
 18
 Wilcosky reached his conclusion by subtracting anticipated expenses and taxes from the company's projected total sales. He arrived at a figure for total sales by using the quarter ending November 30, 1992, as a benchmark. By contrast, Wilcosky estimated total expenses based upon an average of the past three years. It happens that Falls Steel achieved the best sales in its recent history during the quarter ending November 30, thus maximizing projected sales for the duration of the contract and increasing the damages attributable to lost profits.
 
 
 19
 While Trumark has identified weaknesses in the evidence of lost profits offered by Falls Steel, we do not find it to be so "speculative or remote" that the matter should have been taken from the jury. Trumark contends that Wilcosky improperly relied upon the results of an anomalously strong quarter in projecting lost profits. However, he provided reasons for this approach: that a trend of improving profits had emerged, which was directly attributable to the contract at issue, rendering the previous fiscal years unreliable barometers for predicting lost profits. The jury's verdict, an amount substantially below Wilcosky's estimate, reflects that it may have found the proffered testimony less than compelling. However, the fact that the jury chose to assess damages in an amount substantially below that recommended by plaintiff's expert does not mean that the evidence offered in support of lost profits was inadequate as a matter of law.
 
 
 20
 As a final matter, Trumark argues that Ohio law requires that business records be introduced in order to establish lost profits. While such evidence is clearly permissible and would no doubt have strengthened Wilcosky's expert opinion in the case before us, it is not mandatory. See, e.g., AGF, Inc. v. Great Lakes Heat Treating Co., 51 Ohio St.3d 177, 181-82, 555 N.E.2d 634, 638-39 (1990). Furthermore, Falls Steel introduced several exhibits based upon the company's business records, the accuracy of which is not disputed by Trumark.
 
 
 21
 In sum, we conclude that the jury's verdict with respect to lost profits was based upon sufficient evidence and is therefore affirmed.
 
 
 22
 B. Breach of Exclusivity Clause by Falls Steel
 
 
 23
 As cited earlier, the contract contains the following exclusivity clause: "It is the intention of the parties that this joint venture hereafter be the exclusive means through which the parties sell tubular products to Chrysler, and that hereafter neither party will independently sell original equipment tubular products to Chrysler except through the joint venture." The district court ruled that this exclusivity provision did not apply to existing contracts between Chrysler and Falls Steel. We review the district court's construction of a contract de novo. Boyer v. Douglas Components Corp., 986 F.2d 999, 1003 (6th Cir.1993).
 
 
 24
 Under Ohio law the intentions of the parties as expressed in an integrated, unambiguous contract will be given effect. Aultman Hosp. Ass'n v. Community Mut. Ins. Co., 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923 (1989). A court may resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the contract language is unclear or ambiguous. Kelly v. Medical Life Ins. Co., 31 Ohio St.3d 130, 132, 509 N.E.2d 411, 413 (1987).
 
 
 25
 Ray Hicks, president of Falls Steel and a signatory to the contract, testified that he understood it to contain an exception for existing contracts with Chrysler. Furthermore, Trumark's former vice president of technical services testified that he became aware of the dealings based upon the existing contracts with Chrysler in 1992 and did not voice any objection to them. Under Ohio law, a contract term may be impliedly waived where one party misleads another party, to his prejudice, into believing that compliance with the term is not required. Sandler v. All Acquisition Corp., 954 F.2d 382, 385 (6th Cir.1992). When these considerations are construed, as they must be, in favor of Falls Steel, see Porter, 995 F.2d at 635, a reasonable juror could have concluded that the company did not breach the contract with Trumark by honoring its existing contractual commitments to Chrysler.
 
 C. Construction of Contract
 
 26
 Trumark also objects to the district court's refusal to read its preprinted purchase order forms as part of the contract; instead, the trial court ruled that the December 10 letter agreement constituted a complete and binding contract. This court conducts a de novo review of the district court's interpretation of a contract. Boyer, 986 F.2d at 1003.
 
 
 27
 Trumark primarily objects to the district court's determination that the terms on the back of its purchase orders were not incorporated into the agreement. It points to the clause in the contract that states, "Trumark will issue a purchase order to [Falls Steel] for such purchases" as evidence of the parties' intent to incorporate the terms and conditions on the back of Trumark's purchase orders into the contract.
 
 
 28
 In our view, the district court correctly concluded that the December 10 agreement represented a complete and binding contract between the parties. While Falls Steel admitted that it was committed to supply Trumark with high quality tubing and that the purchase orders issued by Trumark were a standard type used in the industry, the record contains no evidence of negotiations prior to the December 10 agreement concerning the terms and conditions on the back of Trumark's purchase orders. See McJunkin Corp. v. Mechanicals, Inc., 888 F.2d 481, 488 (6th Cir.1989) (holding, in a "battle of the forms" case, that the buyer was not subject to the remedy limitations on the back of the seller's purchase order because the buyer "never explicitly accepted" those terms). The purpose of contract construction is to effectuate the intent of the parties. Kelly, 31 Ohio St.3d at 132, 509 N.E.2d at 413. If Trumark expected to rely so heavily upon the terms and conditions on the back of its purchase orders, the language of the December 10 agreement should have explicitly stated that the parties intended to be bound by those terms.
 
 D. Attorney Misconduct
 
 29
 During closing argument, counsel for Falls Steel mischaracterized Trumark's gross sales as profits and relied upon this misstatement to imply that a verdict for his client was proper because Trumark could afford to pay it:
 
 
 30
 And that's all well and good that they could increase their profits in one year from $28 million to $50 million. That's the free enterprise system. But with your verdict on behalf of the Plaintiff for $1,918,000 you can send them a message to say: Increase your profits, but not over the backs of the companies like Falls Steel Tube.
 
 
 31
 We accord considerable deference to the trial court's determination of whether an attorney's comments are so prejudicial as to require a new trial. City of Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 756 (6th Cir.1980). Nonetheless, a new trial will be granted where, based on the totality of the circumstances, " 'there is a reasonable probability that the verdict of a jury has been influenced' by improper conduct." Id. (citation omitted).
 
 
 32
 Counsel's misstatement, while regrettable, does not require a new trial because it constituted an isolated comment that occurred in the context of an entire trial and caused no prejudice. See Clarksville-Montgomery County Sch. Sys. v. United States Gypsum Co., 925 F.2d 993, 1002 (6th Cir.1991) (noting that the burden of showing prejudice falls on party seeking new trial).
 
 E. Weight of the Evidence
 
 33
 Trumark's final argument--that the trial court erred in not granting a new trial because the verdict was against the clear weight of the evidence--need not detain us long. As discussed earlier in this opinion, the evidence introduced by Falls Steel, while not overwhelming, was legally sufficient to sustain the jury's verdict.
 
 III.
 
 34
 For the reasons set forth above, the order of judgment entered by the district court in favor of Falls Steel is affirmed.
 
 
 
 *
 The Honorable James P. Churchill, Senior District Judge for the Eastern District of Michigan, sitting by designation