DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas entered upon a jury verdict finding that plaintiff-appellee, Terri L. Hess, is entitled to participate in the Workers' Compensation Fund for the condition of a herniated disc at C6-7. Appellant Ford Motor Company now raises the following assignments of error from that judgment:
 "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT FORD MOTOR COMPANY'S MOTION FOR A DIRECTED VERDICT.
 "II. THE TRIAL COURT'S JUDGMENT ENTERED UPON THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
On June 13, 1996, Terri Hess was working at her regular job as an assembly worker at Ford's Maumee, Ohio plant. As an assembly worker, Hess would often be assigned to various jobs in a single day. Due to a previous work related injury (severe carpal tunnel), Hess was only permitted to work with restrictions. Those restrictions required Hess to avoid repetitive bending of her right wrist, to avoid repetitive lifting of over ten pounds and to wear wrist splints at all times when she was handling steel. On June 13, 1996, Hess was initially assigned to a windshield wiper assembly line, which is a one-person job. After a short while, however, her foreman and superintendent decided to try to increase production on a new line which handled back inside panels for F-Series trucks. Normally, this job requires two assembly workers who rotate their positions. Prior to rotating, they stack the panels onto the inclined conveyor belt. The foreman decided to see if they could increase their numbers by having Hess continually stacking the panels so they could run the press continually. After stacking the panels for about one hour, Hess started feeling pain in her right shoulder so she took aspirin. She was later assigned to other lines, but the pain in her shoulder worsened throughout the day. She continued to take aspirin until the end of her shift.
After Hess's shift ended she went home to take a hot shower to help relieve the pain, but it continued. Hess then took more aspirin and went to bed. At approximately 4:00 the next morning, Hess awoke in excruciating pain and was unable to sit up in bed. Her son then helped her get dressed and took her to the hospital. At the hospital, Hess was diagnosed with a back sprain/strain and was given pain medication. She then had her son drive her to the Ford plant in order to see Dr. Charles Prezzia, the plant doctor. Hess, however, was in excruciating pain and was nauseous from the pain medication so the plant nurse told her to go home and to return on Monday, June 17, 1996, to see Dr. Prezzia. The nurse's notes from that visit state: "* * * SHE WORKED ABOUT 10 JOBS YESTERDAY AND ISN'T SURE WHAT CAUSED HER PROBLEM BUT IT IS DUE TO WORK."
On June 17, 1996, Hess returned to the Ford plant to see Dr. Prezzia. Dr. Prezzia examined her for approximately seventeen minutes after which he diagnosed her as having cervical degenerative joint disease, a natural deterioration of the cervical discs. Dr. Prezzia indicated in his notes from this appointment that this disease was not caused by any event at work. He then suggested that Hess see her family doctor. That same day, Hess did see her family doctor, Dr. Aguillon, who prescribed additional pain medication and arranged for her to start physical therapy. During her first physical therapy session, however, the therapist realized something more severe was wrong with Hess's neck and sent her back to Dr. Aguillon. Dr. Aguillon then ordered an MRI of Hess's neck which showed a severe herniation of the C6-7 disc. Dr. Aguillon then referred Hess to Dr. Duane B. Gainsburg, a neurological surgeon who had previously treated Hess for her carpal tunnel syndrome.
Hess first saw Dr. Gainsburg on July 12, 1996. Dr. Gainsburg determined that Hess had a large hernia of the C6-7 disc and ultimately recommended surgery. Dr. Gainsburg performed that surgery on July 24, 1996 after which Hess underwent approximately one year of post-surgical treatment. During that time, Hess was unable to work. Hess finally returned to work for Ford in August 1997.
Shortly after her injury, Hess filed a claim for workers' compensation benefits for an injury sustained in the course of and arising out of her employment. That claim was allowed at all administrative levels for the injury of a herniated disc at C6-7. The cause of the injury was determined to be: "Repetitive lifting of parts; work load had increased from 1800 parts per day to 2200 parts per day." Subsequently, Ford appealed the final decision of the Industrial Commission to the Lucas County Court of Common Pleas. Thereafter, the parties dismissed that case by stipulation and on July 10, 1998, Hess filed a complaint in that same court seeking a determination of her right to participate in the Workers' Compensation Fund for the conditions of "cervical strain" and "herniated disc C6-7."
The case proceeded to a jury trial at which Hess, Dr. Gainsburg and Dr. Prezzia testified. At the conclusion of the trial, the jury returned a verdict in favor of Hess. In answering an interrogatory, the jury specifically determined that the herniation of Hess's C6-7 disc was not primarily caused by the natural deterioration of tissue in her neck. Ford now appeals that verdict and the trial court's denial of its motion for a directed verdict.
In its first assignment of error, Ford contends that the trial court erred in denying its motion for a directed verdict which Ford made at the conclusion of appellee's case and renewed at the conclusion of the evidence portion of the trial. Ford asserts that it was entitled to a directed verdict because Dr. Gainsburg's testimony failed to establish a causal connection between appellee's injury and her work activities.
"A motion for directed verdict is to be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party." The Limited Stores, Inc. v. Pan American WorldAirways, Inc. (1992), 65 Ohio St.3d 66, 73, citing Civ.R. 50(A)(4). "Rulings on motions for directed verdict are subject tode novo review on appeal." Titanium Industries v. S.E.A., Inc.
(1997), 118 Ohio App.3d 39, 47-48.
In order to be entitled to workers' compensation benefits, appellee needed to establish by a preponderance of the evidence in the trial below that her disc herniation was a work-related injury as that term is defined in R.C. 4123.01(C). That statute reads in relevant part:
 "`Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. `Injury' does not include:
"* * *
 "(2) Injury or disability caused primarily by the natural deterioration of tissue, an organ, or part of the body[.]"
The establishment of proximate cause through medical expert testimony must be by probability, not mere possibility. Shumakerv. Oliver B. Cannon Sons, Inc. (1986), 28 Ohio St.3d 367, 369;Galletti v. Burns Internatl. (1991), 74 Ohio App.3d 680, 683. That is, the claimant must establish that her injury more likely than not was caused by her work activity. Douglas v. Ohio Bur. ofWorker's Comp. (1995), 105 Ohio App.3d 454, 461.
In the present case, appellee submitted the deposition testimony of Dr. Duane B. Gainsburg, her treating neurosurgeon, to establish the requisite causal connection. Appellant, however, asserts that Dr. Gainsburg never testified that appellee's herniated disc was the result of her work activities. Appellant cites the following testimony of Dr. Gainsburg in support:
 "Q. Okay. Doctor, based upon your professional training and experience and your contact with Ms. Hess, do you have an opinion, within a reasonable degree of medical probability, whether there exists a causal relationship between the diagnosis of herniated disc and C6 and 7 and Ms. Hess' work activity of June 13, 1996?
"Q. First, Doctor, do you have an opinion?
"A. Yes.
"Q. What is your opinion?
 "A. That there is a clear relationship between her symptoms and the finding of the herniated disc and the treatment of the herniated disc."
Appellant asserts that through this testimony, Dr. Gainsburg only established that appellee's symptoms on June 13, 1996 were consistent with the ultimate diagnosis of a herniated disc and that Dr. Gainsburg did not establish a causal connection. However, "[a] determination whether the testimony of a medical expert is sufficient to survive a motion for directed verdict on the issue of proximate cause must be determined in light of all of the expert's testimony." Douglas, supra at 461.
In addition to the above, Dr. Gainsburg testified that disc herniations are caused by trauma. "Trauma from jamming of the head, trauma from whiplash, trauma from repetitive movement of the neck, trauma from a sudden jerking episode, combinations of trauma." He further stated:
 "Now, absent other vigorous neck activity, such as a car accident or a sports injury, you know, kind of one says, well, that didn't happen, this didn't happen, this happened, but she was doing vigorous work with her neck and shoulder and pain started that day; to me that says that the work activity is related to the pain."
Finally, on redirect examination, Dr. Gainsburg testified:
 "Q. Is there anything that Mr. Solt had questioned you about that causes you to question or change your opinion that you had previously indicated and that there was a connection or causal relationship between her work activity of June 13, 1996 and the diagnosis of herniated disc?
"A. No."
Construing Dr. Gainsburg's testimony in a light most favorable to appellee, as we must, we conclude that reasonable minds could reach different conclusions on the issue of whether appellee's injury was proximately caused by her work activity and, therefore, find that the trial court did not err in denying appellant's motion for a directed verdict. The first assignment of error is not well-taken.
In her second assignment of error, appellant asserts that the judgment awarding appellee the right to participate in the Workers' Compensation Fund was against the manifest weight of the evidence. It is well-established that:
 "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
Appellant asserts that because Dr. Gainsburg's testimony did not establish a causal connection between appellee's work activities and her injury, the court's judgment is against the manifest weight of the evidence. However, as we have stated above, Dr. Gainsburg's testimony did establish the requisite causal connection. We therefore conclude that competent, credible evidence existed to support a finding that appellee's injury occurred in the course of and arose out of her employment. The second assignment of error is not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
James R. Sherck, J., Richard W. Knepper, P.J.,Mark L. Pietrykowski, J., CONCUR.