DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiffs-Appellants Ebony Brooks, LaQuinta Redding, and Angela Anderson have appealed from the judgment of the Summit County Court of Common Pleas that granted directed verdicts to Defendants-Appellees Lady Foot Locker and Marques Jones and denied motions for judgment notwithstanding the verdict and a new trial. This Court affirms.
 I {¶ 2} In May 2003, Plaintiffs-Appellants Ebony Brooks ("Brooks"), LaQuinta Redding ("Redding") and Angela Anderson ("Anderson"), (collectively, "Appellants"), filed a complaint against Defendants-Appellees Lady Foot Locker and Marques Jones ("Jones"), (collectively "Appellees"), alleging defamation, assault and battery, false imprisonment, malicious prosecution, intentional infliction of emotional distress and invasion of privacy.[1]
 {¶ 3} A jury trial commenced on August 3, 2004. After Appellants presented their case and upon Appellees' motion, the trial court granted directed verdicts to Appellees on Appellants' defamation, assault, false imprisonment, and intentional infliction of emotional distress claims and on Redding's invasion of privacy claim. On August 5, 2004, the jury rendered its verdict in favor of Appellees on Andersons' claims for battery and invasion of privacy and Brooks' invasion of privacy claim.
 {¶ 4} Appellants filed motions for a new trial and judgment notwithstanding the verdict. The trial court denied Appellants' motions. Appellants have timely appealed, asserting two assignments of error.
 II ASSIGNMENT OF ERROR NUMBER ONE
"The lower court abused its discretion and erred to the prejudice of the [appellants] when it granted a directed verdict in favor of the [appellees] on the appellant's defamation, false imprisonment, intentional infliction of emotional distress and assault claims and appellant reddings' claim of invasion of privacy."
 {¶ 5} In their first assignment of error, Appellants have argued that the trial court erred in granting a directed verdict in Appellees' favor. Specifically, Appellants have argued that they produced substantial evidence of their claims of defamation, false imprisonment, intentional infliction of emotional distress, assault and Redding's claim of invasion of privacy and therefore those claims should have proceeded to the jury. We disagree.
 {¶ 6} A motion for a directed verdict does not present a question of fact, but instead presents a question of law, even though in deciding such motion it is necessary to review and consider the evidence. Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, paragraph one of the syllabus. An appellate court reviews de novo the trial court's granting of a directed verdict. Schafer v. RMS Realty (2000), 138 Ohio App.3d 244,257. An appellate court should affirm the trial court's decision if "when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds could only find against the nonmoving party."Pusey v. Bator (2002), 94 Ohio St.3d 275, 278, citing Civ.R. 50(A)(4);Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 23.
 {¶ 7} Pursuant to Civ.R. 50(A)(4), a trial court is authorized to grant a directed verdict only when:
"[A]fter construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 8} When ruling on a motion for a directed verdict, the court considers the sufficiency of the evidence. Wagner v. Roche Laboratories
(1996), 77 Ohio St.3d 116, 119, reversed on other grounds (1999),85 Ohio St.3d 457.
"When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence." Ruta, 69 Ohio St.2d at 68; see, also Strother v.Hutchinson (1981), 67 Ohio St.2d 282, 284-85.
 {¶ 9} If the party opposing the motion for a directed verdict fails to present evidence on one or more of the essential elements of a claim, a directed verdict is proper. Hargrove v. Tanner (1990),66 Ohio App.3d 693, 695. However, where substantial evidence is presented such that reasonable minds could come to differing conclusions, the court should deny the motion. Posin v. A.B.C. Motor Court Hotel,Inc. (1997), 45 Ohio St.2d 271, 275. Under the "reasonable minds" portion of Civ.R. 50(A)(4), the court is only required to consider whether there exists any evidence of probative value in support of the elements of the nonmoving party's claim. See Coleman v. Excello-Textron Corp. (1989),60 Ohio App.3d 32, 40; Ruta, 69 Ohio St.2d at 69.
 {¶ 10} The following events are undisputed. The instant matter stems from events that occurred at Summit Mall on June 1, 2002. That day Appellants held a yard sale and decided to use their earnings on shopping and dinner. Appellants drove to Summit Mall and parked at the Dillard's south store. Anderson made a purchase at Dillard's and the group proceeded to Lady Foot Locker.
 {¶ 11} Upon entering the store, Redding sat down and held Anderson's bag, while Anderson and Brooks shopped.
 {¶ 12} Jones and another employee were working in the store. Jones helped Anderson and Brooks. Anderson and Brooks tried on clothes, but only Brooks made a purchase. The group was in the store for over a 1/3 hour.
 {¶ 13} Lady Foot Locker does not have surveillance cameras or theftdeterrent sensors on the merchandise. Jones began to think something was going on when he noticed stacks of shirts and a rack of clothes in disarray. He did not see Appellants dishevel the clothes or put any unpurchased merchandise in their bags. Jones counted the shirts and believed one was missing.
 {¶ 14} After Brooks had completed her purchase and the group was headed out of the store, Jones began to follow them. After they crossed the Lady Foot Locker lease line Jones approached them and said "Excuse me [.] I need to look in your bags."
 {¶ 15} With the previously explained standards in mind and the initial undisputed facts outlined, we will examine each of Appellants' causes of action separately.
Assault
 {¶ 16} Appellants have contended that they were assaulted when Jones "followed them through the mall for a distance of 1,043 feet while harassing them and threatening to `jump on the hood of their car' if they tried to leave." Appellants have argued that Jones' demeanor and tone lead them to fear for their safety, thus establishing evidence of an assault. Appellants have asserted that based on the evidence presented, the trial court erred in granting a directed verdict in favor of Appellees on this claim.
 {¶ 17} Jones has asserted that he did not assault any of the Appellants. Appellees have further argued that the statements alleged were "so far removed in time and place from where it may have occurred as to make [the] statement one that would not reasonably place the Appellants in fear that such an action would take place."
 {¶ 18} To establish a claim of civil assault, one must demonstrate a "willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." (Quotations and citation omitted.) Vandiver v. Morgan Adhesives Co.
(1998), 126 Ohio App.3d 634, 638. A key element of assault is that the alleged tortfeasor "knew with substantial certainty that his or her act would bring about harmful or offensive contact. Smith v. John DeereCo. (1993), 83 Ohio App.3d 398, 406. "The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching." Id.
 {¶ 19} Appellants testified at trial that after Jones informed them of his suspicion, they told him they were leaving and he told them he was going with them. When they asked Jones how he was going to go with them he told Appellants he would jump on the hood of their car. During his testimony, Jones denied telling Appellants he would jump on the hood of their car if they tried to leave.
 {¶ 20} Trial testimony also revealed that after Appellants left Lady Foot Locker, Jones followed them closely and attempted to gain permission to look in their bags.
 {¶ 21} Based on the evidence in the record, we find that Appellants failed to produce sufficient evidence to maintain a claim of assault. The record contains no evidence of a willful threat or attempt to harm or touch Appellants offensively. The only statement that could possibly be construed as a threat, although denied by Jones, involved a statement about a future act against Appellants' car, not their persons. Further, Appellants presented no evidence of a definitive act by Jones in connection with the alleged assault.
 {¶ 22} Appellants failed to meet an essential element of assault and therefore, a directed verdict was warranted.
False Imprisonment
 {¶ 23} Appellants have argued that they were falsely imprisoned because Jones "follow[ed] them through the mall and refus[ed] to let them leave." Appellants have asserted that the trial court erred in granting a directed verdict in favor of Appellees on this claim. Appellees have asserted that Appellants presented no evidence of confinement.
 {¶ 24} To establish a claim of false imprisonment, a plaintiff must demonstrate that the defendant intentionally confined the plaintiff within a limited area, for any appreciable time, without lawful privilege or the plaintiff's consent. Witcher v. Fairlawn (1996),113 Ohio App.3d 214, 217, citing Feliciano v. Kreiger (1977),50 Ohio St.2d 69, 71. "Confinement consists of a total detention or restraint upon [the plaintiff's] freedom of locomotion, imposed by force or threats." (Quotations and citations omitted.) (Alterations original.)Witcher, 113 Ohio App.3d at 217. "If the plaintiff does not offer any proof of confinement, then the cause of action fails as a matter of law." Id.
 {¶ 25} By all accounts, Appellants walked away from Jones after he informed them of his suspicions. Jones testified that he followed them to try and find mall security. It is undisputed that as Appellants arrived at the Dillard's south store, they ran into someone they knew, stopped walking, and engaged in conversation and a prayer session.
 {¶ 26} Ed Martin ("Martin"), a Summit Mall security guard who approached Jones and Appellants outside the Dillard's south store, testified that Appellants were not detained when he arrived on the scene.
 {¶ 27} Appellants testified that they felt Jones was not going to let them leave the mall unless he could look in their bags. Brooks felt she was free to leave after Jones looked in her bag and did not discover any stolen merchandise.
 {¶ 28} We find that the record is void of an essential element to sustain a claim of false imprisonment. While this Court recognizes that Appellants testified they didn't "feel" they could leave, we find that their actions and Jones' actions do not establish false imprisonment. By Appellants' own testimony, they walked away from Jones and walked the length of the mall without being physically restrained or confined in any way. Appellants only stopped walking when they encountered an acquaintance. The record shows that even after Jones had physical contact with Anderson, Appellants were still able to walk away without Jones hindering their movement. The trial testimony contains no evidence that Jones detained or restrained Appellants. Further, Martin testified that once he arrived on the scene he did not witness Jones confine Appellants.
 {¶ 29} Based on the foregoing, we find that Appellants failed to present evidence to establish the essential element of confinement for their false imprisonment claim. Without a confinement, their claim fails as a matter of law and a directed verdict in Appellees' favor was properly granted.
Intentional Infliction of Emotional Distress
 {¶ 30} Appellants have argued that Jones intended to cause them emotional distress or should have known his actions would cause such a result. Appellants have contended that as a result of Jones' actions they suffered severe emotional distress. Appellants have argued that they produced sufficient evidence of intentional emotional distress and that the trial court erred in granting a directed verdict on this claim. Appellees have responded that Appellants presented no evidence that any emotional distress suffered was serious or debilitating.
 {¶ 31} To prevail on an intentional infliction of emotional distress claim, a plaintiff must show that:
"(1) [The defendant] either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to [plaintiff]; 2) that [defendant's] conduct was so extreme and outrageous as to go `beyond all possible bounds of decency' and was such that it can be considered as `utterly intolerable in a civilized community;' 3) that [defendant's] actions were the proximate cause of [plaintiff's] physic injury; and 4) that the mental anguish suffered by [plaintiff] is serious and of a nature that `no reasonable man could be expected to endure it.'" (Internal citations omitted). Pylev. Pyle (1983), 11 Ohio App.3d 31, 34. See, also, Jarvis v.Gerstenslager Co., 9th Dist. Nos. 02CA0047 and 02CA0048, 2003-Ohio-3165, at ¶ 67.
 {¶ 32} The emotional distress suffered must be both severe and debilitating to recover damages under an intentional infliction of emotional distress claim. Paugh v. Hanks (1983), 6 Ohio St.3d 72, 78. The injury that is suffered must surpass upset or hurt feelings; "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not sufficient to sustain an intentional infliction of emotional distress claim. (Quotation omitted.) Yeager v. Local Union 20
(1983), 6 Ohio St.3d 369, 375. The injury must be such that "`a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.'" Jones v. White (Oct. 15, 1997), 9th Dist. No. 18109, at 18, quoting Davis v. Billow Co. Falls Chapel (1991), 81 Ohio App.3d 203,207.
 {¶ 33} In Graves v. Van Buskirk (Feb. 20, 1991), 9th Dist. No. 14785, this Court held that the trial court did not err in granting summary judgment with respect to the appellant's intentional infliction of emotional distress claim. We found that summary judgment was warranted because 1) the appellant had not submitted any medical records or bills to the court; 2) no testimony from independent witnesses or experts was offered to support claims of emotional distress; and 3) there was no evidence in the record to support the existence of a definable physical or psychological problem.
 {¶ 34} As a preliminary matter, a trial court makes the threshold determination of what constitutes `outrageous' conduct as a matter of law. Jarvis, at ¶ 69, citing Binns v. Fredendall (1987),32 Ohio St.3d 244, 245, fn.1.
 {¶ 35} It is undisputed that the walk from Lady Foot Locker to Dillard's south store and back involved elevated voices. Martin remembered hearing yelling on the way back to Lady Foot Locker, with Brooks and Anderson making derogatory remarks about Jones and racial comments about the incident. Martin also testified that Brooks cussed at Jones. Appellants denied cussing at Jones, except for a statement by Anderson to Jones telling him to "kiss [her] ass."
 {¶ 36} Testimony also established that each of the Appellants cried during the incident. The evidence revealed that Jones apologized after he discovered that Appellants did not steal any merchandise.
 {¶ 37} Brooks testified that she no longer has fun shopping and that when she does shop she is always checking to see if a clerk is following her when she leaves. Brooks testified that she had nightmares about being arrested for shoplifting and that she suffered from headaches, but had not consulted a doctor. Instead, Brooks "took a lot of Nyquil" to aid her sleep and Tylenol for the headaches.
 {¶ 38} Anderson testified that she no longer enjoys shopping and when she does shop she has thoughts that people are looking at her. She has worries that store employees are going to follow her out of stores. Anderson also suffered from nightmares and headaches, but had not sought counseling or consulted a doctor. Instead she had taken Excedrin PM at night and Advil for her headaches.
 {¶ 39} Redding also does not like to shop anymore. She visited the doctor for migraines and received medication. She had also sought the help of her husband who is a youth minister.
 {¶ 40} Upon review of the record, this Court finds that Appellants failed to establish a claim for intentional infliction of emotional distress. As previously discussed, to be liable for such a claim, Appellees must have acted intending to cause emotional distress and the conduct must have been so extreme and outrageous that it went beyond all possible bounds of decency. See Pyle, 11 Ohio App.3d at 34. Further, the Appellants must have suffered serious emotional distress. The record is void of evidence to establish such elements.
 {¶ 41} After reviewing the trial transcripts, we find no evidence of conduct that was so outrageous as to go beyond all possible bounds of decency. Trial testimony established that the instant matter began with Jones saying "[e]xcuse me" to Appellants. He then attempted to obtain permission to look in their bags, which Appellants denied. Appellants walked away from him and he followed them. By all accounts, Jones and Appellants discussed Jones' suspicion on the walk to Dillard's south store. Appellants remained in the situation and engaged Jones in lively conversation about his suspicions. There was no evidence presented that Jones was making a scene about the women walking away from him, he did not call out "stop thief" or "they stole my merchandise." Rather when Appellants' acquaintance and mall security asked what was going on, Jones informed them that he had a suspicion that they had possession of some of his merchandise. He readily admitted that he did not see them take anything.
 {¶ 42} Martin testified that the first call he received about the incident was not about Jones' behavior, but about three females causing a commotion. Further, Martin testified that Brooks and Anderson were yelling and cussing at Jones. As previously mentioned Jones apologized when he learned his suspicions were wrong and Appellants still yelled at him and started making derogatory comments about him and his job.
 {¶ 43} We find that Appellants did not present evidence that a reasonable person could not cope with the situation and that Jones' conduct was so outrageous as to go beyond all possible bounds of decency. In fact, we do not find that Appellants were not able to cope with the situation. The record shows that Appellants remained in the situation, engaged the person they accused of such outrageous conduct in verbal arguments, and made derogatory and racial statements while walking through the mall.
 {¶ 44} We also find that Appellants' testimony did not provide evidence of serious emotional distress. Crying during the incident and no longer enjoying shopping are not sufficient to establish such a condition. Brooks and Anderson testified about nightmares and headaches, but did not seek treatment for their distress. Redding testified that she suffered from migraines and received medication for them, but no connection was made between the migraines and incident and no evidence was presented that the migraines interfered with Redding's daily activities or life. Appellants presented no evidence of the severe and debilitating emotional distress required to establish an intentional infliction of emotional distress claim.
 {¶ 45} We find that reasonable minds could only find against Appellants on the elements of outrageous conduct and serious emotional distress. Accordingly, the trial court did not err in granting Appellees a directed verdict on Appellants' claims for intentional infliction of emotional distress.
Defamation
 {¶ 46} Appellants have argued that Jones defamed them by loudly accusing them of stealing merchandise from his store. They have claimed that they have established a claim for defamation because Jones' accusations about Appellants were false, published to other mall patrons, and defamatory per se. Appellants have argued that they set forth ample testimony regarding their claims of defamation and the trial court erred in granting a directed verdict in Appellees' favor. Appellees have argued that Jones did not make a false statement of fact; he merely stated what he suspected.
 {¶ 47} A cause of action for defamation requires proof of five elements: "(1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory per se or caused special harm to the plaintiff." (Emphasis sic.) Gosden v. Louis (1996), 116 Ohio App.3d 195, 206. "A statement is defamatory per se if it tends to cause injury to a person's reputation, exposes him to public ridicule or shame, or adversely affects a person in their trade or business." Sovchik v. Roberts (May 9, 2001), 9th Dist. No. 3090-M, at 6.
 {¶ 48} Trial testimony established that Jones informed Appellants that he had a suspicion that they had some of his merchandise. Jones did not feel that informing Appellants of his suspicions was an accusation because he did not call Appellants thieves or say they stole anything. As previously discussed, Jones did not tell anyone that Appellants had in fact shoplifted; he only said he had a suspicion that they had some of his merchandise. It is undisputed that Jones admitted to everyone that he did not see Appellants steal anything.
 {¶ 49} Based on the evidence in the record, we find that Appellants failed to establish that Jones made a false and defamatory statement. The record shows that Jones only stated his suspicion and that he admitted repeatedly that he did not see Appellants take anything from the store. While Appellants testified that Jones accused them of theft, they did not provide direct quotes to substantiate their testimony or explain if Jones' "accusations" were verbalized or their interpretations of his actions. Rather, Appellants admitted that Jones repeatedly informed them that he had a suspicion that they had some of his merchandise. Without Appellants' presenting evidence of a false and defamatory statement, Appellees were properly granted a directed verdict on Appellants' claim of defamation.
Invasion of Privacy
 {¶ 50} Appellants have argued that Jones invaded Redding's privacy by following her closely through the mall and "accusing [Appellants] of stealing." Appellants have also argued that Jones' behavior caused Redding mental suffering and shame. Appellants have asserted that based on the evidence presented, the trial court erred in granting a directed verdict in favor of Appellees on Redding's invasion of privacy claim. Appellees have responded that Appellants presented no evidence regarding an invasion of Redding's privacy. Specifically, Appellees have argued that no item or bag belonging to Redding was searched and that walking closely to Redding did not constitute an invasion of privacy.
 {¶ 51} Invasion of privacy claims involve "`the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.'" Lamar v. A.J. Rose Mfg. Co. (Oct. 11, 2000), 9th Dist. No. 99CA007326, at 11, quoting Housh v. Peth (1956), 165 Ohio St. 35, paragraph two of the syllabus. "`One who intentionally intrudes, physically, or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" Lathwell v. Lorain Cty. Jobs for Ohio's Graduates
(May 10, 2000), 9th Dist. No. 99CA007303, at 8, quoting Sustin v. Fee
(1982), 69 Ohio St.2d 143, 145.
 {¶ 52} One can also claim invasion of privacy for "publicity which places the plaintiff in a false light in the public eye[.]" (Citation omitted.) Piro v. Franklin Twp. (1995), 102 Ohio App.3d 130, 144.
 {¶ 53} We find that Appellants failed to establish sufficient evidence of an invasion of Redding's privacy. Appellants presented no evidence of Jones intentionally intruding on Redding or evidence of publicity that placed Redding in a false light. Jones walking closely to Redding does not equate to a wrongful physical intrusion into Redding's private activities. Appellants presented no evidence that Jones' close walking would be highly offensive to a reasonable person.
 {¶ 54} Appellants' allegation that Jones publicly placed Redding in a false light is also unsupported by the record. As discussed in Appellants' defamation argument, Jones only informed Appellants and others that became involved in the situation that he had a suspicion that Appellants had some of his merchandise. Jones did not make a public announcement at the mall or in any store that Appellants had stolen something.
 {¶ 55} Based on the foregoing, we find that Appellants did not establish the elements of the invasion of Redding's privacy and that reasonable minds could only find against Appellants on said claim. Accordingly, Appellees were properly granted a directed verdict on Redding's invasion of privacy claim.
 {¶ 56} Based on the foregoing, Appellants' first assignment of error lacks merit.
Assignment of Error Number Two
"The lower court erred in not granting judgment notwithstanding the verdict and motion for a new trial because the verdict in favor of the [appellees] is contrary to law and against the manifest weight of the evidence."
 {¶ 57} In their second assignment of error, Appellants have argued that the trial court erred in denying their motion for a judgment notwithstanding the verdict and their motion for a new trial. We disagree.
Motion for a New Trial
 {¶ 58} An appellate court reviews a trial court's ruling on a motion for a new trial under the abuse of discretion standard. Pena v. NortheastOhio Emergency Affiliates, Inc. (1995), 108 Ohio App.3d 96, 103;Cooperider v. Parker, 9th Dist. No. 02CA0065-M, 2003-Ohio-4521, at ¶ 29, citing Rohde v. Farmer (1970) 23 Ohio St.2d 82, paragraph one of the syllabus. "`Abuse of discretion,' in relation to the [disposition] of a motion for a new trial[,] implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." (Citation omitted.) (Alterations original.) Cooperider, at ¶ 29.
 {¶ 59} Upon review of the record, this Court cannot find that the trial court abused its discretion in denying Appellants' motion for a new trial. The record is void of any evidence that the trial court's decision was unreasonable, arbitrary or unconscionable.
Motion for Judgment Notwithstanding the Verdict
 {¶ 60} An appellate court reviews a trial court's ruling on a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) de novo. Id. at ¶ 32, citing Schafer v. RMS Realty (2000),138 Ohio App.3d 244, 257-58. When considering a motion for judgment notwithstanding the verdict, a court construes the evidence and all reasonable inferences most strongly in favor of the nonmoving party.Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275. As in our review of the trial court's granting of directed verdicts in Appellees' favor, our review of its denial of Appellants' motion for judgment notwithstanding the verdict does not involve weighing the evidence. McComis v. Baker (1974), 40 Ohio App.2d 332, 334-35. Rather if we find substantial evidence to support the non-moving Appellees' side of the case, upon which reasonable minds might reach different conclusions, Appellants' motion was properly denied. Posin,45 Ohio St.2d at 275.
 {¶ 61} A motion for judgment notwithstanding the verdict can only be made regarding claims that the jury returned a verdict on; as such any claims disposed of before the case went to the jury cannot be reviewed in a motion for judgment notwithstanding the verdict. Freeman v. Wilkinson
(1992), 65 Ohio St.3d 307, 309. Accordingly, the only causes of action properly contained in Appellants' motion for a judgment notwithstanding the verdict were Anderson's claims of battery and invasion of privacy and Brooks' claim of invasion of privacy. Therefore, this Court limits its review of Appellants' argument for judgment notwithstanding the verdict to those three claims.
Battery
 {¶ 62} Appellants have argued that the trial court erred in denying their motion for judgment notwithstanding the verdict on Anderson's battery claim because the evidence showed that Jones "grabbed" Anderson twice and that the grabbing established a battery. We disagree.
 {¶ 63} To establish a claim for civil battery, a plaintiff must demonstrate that the defendant acted intending to cause a harmful or offensive contact and, in fact, a harmful contact results. Love v. PortClinton (1988), 37 Ohio St.3d 98, 99. "Contact which is offensive to a reasonable sense of personal dignity is offensive contact." Id., citing Restatement of the Law 2d, Torts, at 35, Section 19.
 {¶ 64} During the trial, Jones admitted that he touched Anderson. He explained that she was the closest person to him when he was trying to get the Appellants' attention. He testified that he put his left hand, with an open palm, on her right shoulder. Jones characterized the touch as a "brush on the shoulder." Anderson told him not to touch her. Jones admitted touching Anderson a second time after the group finished praying at Dillard's. He testified that he was consoling her by placing his hand on her shoulder. Anderson again told him not to touch her.
 {¶ 65} Martin testified that he witnessed Jones "grab" Anderson's arm and he instructed Jones not to touch mall patrons.
 {¶ 66} Appellants testified to a slightly different version of Jones' first physical contact with Anderson. Brooks testified that Jones "grabbed [Anderson's] shoulder back." Anderson testified that she "was grabbed on [her left] shoulder" with "like an open palm."
 {¶ 67} Anderson testified that the second time Jones initiated physical contact with her he "grabbed" her again and "it was like a brush." Anderson admitted that she had no physical injury or pain from Jones touching her.
 {¶ 68} It is undisputed that Jones said "excuse me" as he touched Anderson the first time. Jones testified the second touch was meant to console Anderson, not harm her. Also, it is undisputed that while Jones did touch Anderson after being told not to, he stopped touching her when she told him not to touch her. What is in dispute is the characterization of the contact. Jones testified it was only touch and Appellants and Martin testified it was a grab. But while Anderson testified she was "grabbed" twice by Jones, she admitted she had no physical pain or injury. Further, the surrounding circumstances of each contact are undisputed.
 {¶ 69} Based on the testimony, we find that there was substantial evidence to support Jones version of his touching Anderson. To find Jones liable the jury had to find Jones' behavior offensive to a reasonable sense of personal dignity. Given the differing characterizations of Jones' physical contact with Anderson, this Court finds that reasonable minds could reach different conclusions as to what occurred and whether Jones' action constituted a battery or a touch. Accordingly, the trial court properly denied Appellants' motion for a judgment notwithstanding the verdict on Anderson's battery claim.
Invasion of Privacy
 {¶ 70} Appellants have asserted that the trial court erred in denying their motion for judgment notwithstanding the verdict on Brooks' and Anderson's invasion of privacy claims because Jones invaded Brooks' and Anderson's privacy by following them through the mall and searching their bags. We disagree.
 {¶ 71} As previously discussed, invasion of privacy involves "`the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.'" Lamar, supra at 11, quoting Housh v. Peth
(1956), 165 Ohio St. 35, paragraph two of the syllabus. Invasion of privacy can also include "publicity which places the plaintiff in a false light [.]" (Citation omitted.) Piro, 102 Ohio App.3d at 144.
 {¶ 72} Jones testified that the security officers introduced themselves to Appellants and asked them if Jones could look in their bags. Appellants gave their bags to the security officers and Jones looked in the bags.
 {¶ 73} Martin testified that when he arrived at Dillard's Brooks and Anderson were "adamant about showing [him] their bags."
 {¶ 74} Appellants testified that when Martin arrived on the scene, Jones told him of his suspicions and Martin put his hand out and Brooks felt he wanted her bag so she handed it to him. Martin then opened the bag and Jones looked through it. Martin then motioned for Anderson's bag and she handed it to him and Jones looked through her bag.
 {¶ 75} Brooks and Anderson testified that Jones followed them very closely from Lady Foot Locker to Dillard's.
 {¶ 76} The trial testimony clearly established that Brooks and Anderson gave mall security their bags and Jones looked through them. Jones and Martin testified that Martin asked for the bags and Appellants testified that Martin motioned for the bags. Trial testimony established that Jones had been asking to look in their bags for over a ½ hour and that he was next to Martin when Brooks and Anderson gave him their bags. Further, Anderson watched Jones go through Brooks' bag and then she handed Martin her bag with Jones still standing next to him.
 {¶ 77} Based on the evidence presented, we find that there was substantial evidence before the jury to demonstrate that Jones did not invade Brooks' and Anderson's privacy by walking closely to them in the mall and then looking through their bags. Reasonable minds could reach different conclusions about whether Jones' behavior was a wrongful intrusion or a consensual search. Accordingly, the trial court properly denied Appellants' motion for a judgment notwithstanding the verdict on Brooks' and Anderson's invasion of privacy claim
 {¶ 78} Appellants' second assignment of error lacks merit.
 III {¶ 79} Appellants' two assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
Exceptions.
Slaby, P.J., Batchelder, J., Concur.
[1] IPC International, Edward Martin Jr., and John Stevens were also named in the complaint but are not parties to the instant appeal.