DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiffs-Appellants Margie and Amanda Roberts ("the Roberts") have appealed from the judgment of the Summit County Court of Common Pleas that granted directed verdict in favor of Defendant-Appellee John Paul Crow, M.D. ("Dr. Crow"). This Court reverses.
 I {¶ 2} On July 2, 2003, the Roberts filed a complaint for medical malpractice in the Summit County Court of Common Pleas.[1] The complaint named as defendants the following: Dr. Crow, Robert L. Klein, M.D. Associates, Inc. and Children's Hospital Medical Center of Akron.[2] The complaint alleged that Dr. Crow was negligent while performing a laparoscopic cholecystectomy on Amanda Roberts. The complaint also set forth claims of lack of informed consent and loss of consortium.
 {¶ 3} A jury trial commenced on January 24, 2005. At the close of the Roberts' case in chief, Dr. Crow moved to strike the testimony of the Roberts' pediatric surgery expert, Dr. Lobe, based on the assertion that Dr. Lobe had changed his opinion during the trial and recanted his testimony. Dr. Crow also moved for directed verdict on the basis that the Roberts' had failed to establish the prima facie elements of medical negligence.
 {¶ 4} On January 27, 2005, the court denied Dr. Crow's motion to strike, but granted his motion for a directed verdict. The court entered a final, appealable order directing a verdict in favor of Dr. Crow on January 31, 2005. The Roberts have timely appealed this decision, asserting two assignments of error.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED IN DIRECTING A VERDICT IN FAVOR OF THE DEFENDANT/APPELLEE, JOHN PAUL CROW, M.D. WHEN THE PLAINTIFFS/APPELLANTS HAD SET FORTH A PRIMA FACIE CASE OF MEDICAL NEGLIGENCE."
 {¶ 5} In their first assignment of error, the Roberts have argued that the trial court erred in directing a verdict in favor of Dr. Crow. Specifically, they have argued that they had established a prima facie case of medical negligence and thus the trial court committed reversible error by taking the case away from the jury and substituting itself as the finder of fact. We agree.
 {¶ 6} We begin by noting that "[a] motion for a directed verdict does not present a question of fact, but instead presents a question of law, even though in deciding such motion it is necessary to review and consider the evidence." Brooks v. LadyFoot Locker, 9th Dist. No. 22297, 2005-Ohio-2394, at ¶ 6, citingRuta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, paragraph one of the syllabus. Accordingly, this Court reviews a trial court's decision to grant or deny a directed verdict de novo. Gugliotta v. Moreno, 161 Ohio App.3d 152, 2005-Ohio-2570, at
¶ 30, citing Whitaker v. M.T. Automotive, Inc. 9th Dist. No. 21836, 2004-Ohio-7166, at ¶ 32. An appellate court should affirm the trial court's decision if "`when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds could only find against the nonmoving party.'" Brooks at ¶ 6, quotingPusey v. Bator (2002), 94 Ohio St.3d 275, 278. See Civ.R. 50(A)(4).
 {¶ 7} We have held that "if the party opposing the motion for a directed verdict fails to present evidence on one or more of the essential elements of a claim, a directed verdict is proper.Brooks at ¶ 9, citing Hargrove v. Tanner (1990),66 Ohio App.3d 693, 695. However, where substantial evidence is presented such that reasonable minds could come to differing conclusions, the court should deny the motion. Posin v. A.B.C. Motor CourtHotel (1997), 45 Ohio St.2d 271, 275. Furthermore, we have stated that "[u]nder the `reasonable minds' portion of Civ.R. 50(A)(4), the court is only required to consider whether there exists any evidence of probative value in support of the elements of the non-moving party's claim." Brooks at ¶ 9 (emphasis added).
 {¶ 8} In the present case, the Roberts have argued that when viewed in their favor, the testimony of their pediatric surgery expert, Dr. Lobe, established "any" evidence supporting the elements of the medical negligence claim. Dr. Crow has countered by alleging that Dr. Lobe recanted his expert opinion while testifying and therefore the Roberts failed to establish by competent, expert medical testimony that Dr. Crow's conduct fell below the standard of care.
 {¶ 9} To prove a case of medical negligence, the Roberts were required to establish three elements: (1) the standard of care recognized at the time of the events complained of; (2) a failure by the [doctor] to meet that standard of care; and (3) a probable and proximate causal link between the claimed negligent act and the injuries sustained. Burns v. Krishnan (Jan. 28, 1998), 9th Dist. No. 96CA006650, at 13. See Bruni v. Tatsumi (1976),46 Ohio St.2d 127, paragraph one of the syllabus.
 {¶ 10} After a careful review of the record, we find that the Roberts adequately presented evidence on the essential elements of a medical negligence claim. See Burns, supra. Dr. Lobe's testimony, while convoluted and unclear at times, did not constitute a recantation of his expert opinion concerning the appropriate standard of care. The law in Ohio is clear regarding expert testimony in medical negligence cases and directed verdicts. Generally, once an expert:
"[P]roperly states his professional opinion to a properly formed question as to `probability,' he or she has established a prima facie case as a matter of law. Erosion of that opinion due to effective cross-examination does not negate that opinion; rather it only goes to weight and credibility. Thus, it would not usually be a suitable instance for application of a directed verdict." (Quotations omitted). Heath v. Teich, 10th Dist. No. 03AP-1100, 2004-Ohio-3389, at ¶ 14, quoting Galletti v. BurnsInternatl. (1991), 74 Ohio App.3d 680, 684 (Christley, P.J., concurring).
 {¶ 11} Dr. Crow has argued that an exception exists "`when the expert actually recants the opinion on cross.'" Id. SeeDiSilvestro v. Dr. Patrick A. Quinn (Dec 31, 1996), 11th Dist. No. 95-L-061, at *6, 1996 WL 757519 (holding "the fact that the testimony of an expert witness has been tested during cross-examination does not warrant the granting of such a motion unless the expert contradicts or recants his testimony").
 {¶ 12} Dr. Crow has specifically argued that Dr. Lobe's singular criticism was that he failed to perform an interoperative cholangiogram on Amanda Roberts. Dr. Crow has grounded that argument in Dr. Lobe's deposition testimony where he stated "[m]y only criticism [of Dr. Crow] is not doing a cholangiogram." Dr. Crow has argued that while being cross examined, Dr. Lobe withdrew this specific criticism by acknowledging that an interoperative cholangiogram would have been inappropriate given a patient that presented as Amanda Roberts did. According to Dr. Crow's argument, Dr. Lobe then modified his expert opinion to include opening up the patient's abdomen as required by the standard of care, a solution which Dr. Crow asserted was never mentioned in Dr. Lobe's prior testimony.
 {¶ 13} Essentially, Dr. Crow has focused solely on the issue of whether Dr. Lobe testified that the standard of care required a surgeon to perform a cholangiogram when unsure of the anatomy. This is not precisely what Dr. Lobe testified to regarding the standard of care. First, we note that the case law Dr. Crow refers to requires that "the party moving for a directed verdict must show that the testimony was resolved in its favor by a direct contradiction, negation, or recantation of the testimony given by the witness on direct examination." Heath at ¶ 14, citing Nichols v. Hanzel (1998), 110 Ohio App.3d 591, 602. In the present case, we note that Dr. Crow has repeatedly referred to Dr. Lobe's deposition testimony in which he stated "[m]y only criticism is not doing a cholangiogram[,]" not his direct testimony.
 {¶ 14} Second, we find that Dr. Lobe did not limit his criticism of Dr. Crow to his only failing to perform a cholangiogram. When reviewing a trial court's decision regarding a motion for directed verdict, we are required to consider the totality of the medical testimony, not just a portion. Bailey v.Emilio C. Chu, M.D., Inc. (1992), 80 Ohio App.3d 627, 635. We must also look at the testimony in context. See, e.g., Wittmanv. Akron, 9th Dist. No. 21375, 2003-Ohio-5617, at ¶ 26.
 {¶ 15} In his deposition, Dr. Lobe did in fact state "[m]y only criticism is not doing a cholangiogram." However, he also testified that if Dr. Crow had done "[a] cholangiogram, for example, to lay out the anatomy, and then still had a common duct injury, I wouldn't be here today." (Emphasis added). He testified that "it is mandatory that you identify thestructures before you cut anything or clip anything." (Emphasis added). He testified that if a surgeon can't "see [the anatomy] clearly" the surgeon must "do something to clarify it." (Emphasis added). Dr. Lobe then stated that "[o]ne of the somethings that you can do is to do a cholangiogram." Dr. Lobe also testified at his deposition that if the anatomy is unclear and a cholangiogram cannot be performed, then another option is opening the patient up to visualize the anatomy. It is clear from his deposition testimony that Dr. Lobe believed the standard of care required clearly laying out the anatomy prior to cutting, and that he viewed performing a cholangiogram as simply one method of adhering to the standard of care.
 {¶ 16} Dr. Lobe repeated his opinion from his deposition at trial. Dr. Lobe clearly testified on direct examination that the standard of care is that a surgeon must "lay out" the anatomy prior to clipping or dividing any structure. He further testified to a reasonable degree of medical probability that the aforementioned standard of care may be met by performing a contrast study (cholangiogram), or by opening the patient up to visualize the anatomy. Dr. Lobe repeatedly asserted that when a surgeon is unsure about the anatomy, he must "lay out" the anatomy. Finally, Dr. Lobe testified to a reasonable degree of medical probability that misidentifying and cutting the common bile duct twice in one surgery could not happen absent negligence. While it may be inferred that Dr. Lobe is preferential to cholangiograms, at no time does he ever state, in his expert opinion that Dr. Crow deviated from the standard of care solely because he failed to perform a cholangiogram.[3]
 {¶ 17} Based on the foregoing, we find that Dr. Lobe did not recant or contradict his expert opinion. While Dr. Lobe did concede that a cholangiogram was inappropriate in this case, he affirmed the fact that Dr. Crow should have then opened the patient up in order to clearly lay out the anatomy. Contrary to Dr. Crow's protestations, such a solution was not a surprise, was not a new expert opinion, and had been suggested not only during Dr. Lobe's direct testimony, but in his deposition as well. Accordingly, "[i]f no such contradiction or negation is shown, the testimony given on cross-examination only arouses speculation regarding the witness's testimony on direct and leaves aquestion of fact for the jury to determine." Nichols,110 Ohio App.3d at 602, citing Galletti, 74 Ohio App.3d at 684
(emphasis added). See also Heath at ¶ 14.
 {¶ 18} Therefore, because Dr. Lobe stated his professional opinion and did not retract, repudiate, withdraw or fatally contradict his expert opinion on the standard of care, we find that the Roberts established a prima facie case for medical negligence. As such, a conflict existed as to the appropriate standard of care[4] and it was error for the trial court to take the matter out of the hands of the jury. Furthermore, when viewed most strongly in favor of the Roberts, reasonable minds could come to differing conclusions regarding the standard of care. Therefore, the trial court should have denied the motion for a directed verdict. See Posin, 45 Ohio St.2d at 275.
 {¶ 19} Appellant's first assignment of error has merit.
 Assignment of Error Number Two
"THE TRIAL COURT ERRED IN CONCLUDING THAT THE DOCTRINE OF RES IPSA LOQUITUR DID NOT APPLY WHEN THE PLAINTIFFS/APPELLANTS ESTABLISHED THAT (1)
THE INSTRUMENTALITY WHICH CAUSED THE INJURY WAS IN THE EXCLUSIVE CONTROL OF THE DEFENDANT/APPELLEE, AND (2) THE INJURY WOULD NOT HAVE OCCURRED HAD ORDINARY CARE BEEN USED."
 {¶ 20} In their second assignment of error, the Roberts have argued that the trial court erred when it concluded that the doctrine of res ipsa loquitur did not apply. Specifically, the Roberts' have argued that they established the elements of res ipsa loquitur by proving that Dr. Crow was in exclusive control of the instrumentality and that the injury to Amanda Roberts could not have happened absent negligence. We disagree.
 {¶ 21} We begin by noting that the giving of jury instructions is within the sound discretion of the trial court.State v. Brady, 9th Dist. No. 22034, 2005-Ohio-593, at ¶ 5, citing State v. Hipkins (1982), 69 Ohio St.2d 80, 82. We review such a decision under an abuse of discretion standard. State v.Clay, 9th Dist. No. 04CA0033-M, 2005-Ohio-6, at ¶ 5. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the court that is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Therefore, the decision of the trial court will not be disturbed on review unless the trial court acted unreasonably, arbitrarily or unconscionably.Brady at ¶ 5.
 {¶ 22} Furthermore, "[w]hether sufficient evidence has been adduced at trial to warrant application of [res ipsa loquitur] is a question of law to be determined initially by the trial court, subject to review upon appeal." Hake v. Wiedemann Brewing Co.
(1970), 23 Ohio St.2d 65, 67. See, e.g., Dames v. ClevelandElec. Illuminating Co. (Mar. 29, 1996), 11th Dist. No. 95-A-0045, at *4, 1996 WL 284983 (stating "[t]he determination whether it is proper to give an instruction on res ipsaloquitur is to be made by the trial court as a matter of law on a case-by-case basis."). Therefore, in order to determine whether the lower court abused its discretion, we must review the applicability of the res ipsa loquitur doctrine de novo. SeePreferred Capital, Inc. v. Power Engineering Group, Inc., 9th Dist. Nos. 22475-22478, 22485-22489, 22497, 22499, 22506, 22513,2005-Ohio-5113, at ¶ 11.
 {¶ 23} Res ipsa loquitur has been defined as "`a rule of evidence which permits the trier of fact to infer negligence on the part of the defendant from the circumstances surrounding the injury to plaintiff.'" Davis v. City of Akron (Mar. 8, 2000), 9th Dist. No. CA19553, at 5, quoting Hake, 23 Ohio St.2d at 66. Res ipsa loquitur is "applicable where the instrumentality that caused the injury was, either at the time of the injury or at the time of the creation of the condition causing the injury, (1) under the exclusive management and control of the defendant, and (2) the injury would not have occurred if ordinary care had been observed." Id. citing Hake, 23 Ohio St.2d at 66-67.
 {¶ 24} However, "[r]es ipsa loquitur does not apply where the facts are such that an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as that it was due to his negligence." Norris v.Mansfield Business College (Jan 26, 1994), 9th Dist. No. 15841, at 4. The Supreme Court of Ohio has explained the application of res ipsa loquitur as follows:
"Where it has been shown by the evidence adduced that there are two equally efficient and probable causes of the injury, one of which is not attributable to the negligence of the defendant, the rule of res ipsa loquitur does not apply. In other words, where the trier of the facts could not reasonably find one of the probable causes more likely than the other, the instruction on the inference of negligence may not be given." Jennings Buick,Inc. v. City of Cincinnati (1980), 63 Ohio St.2d 167, 171.
 {¶ 25} In the instant case, Dr. Crow's negligence is not the only causal inference that can be adduced from the facts. The jury may draw the inference that the injury was caused by something other than Dr. Crow's negligence. On the Roberts' behalf, Dr. Lobe testified that cutting the common bile duct twice during the same surgery would not happen absent negligence. However, it could also be inferred from the evidence that Dr. Crow was faced with an abnormal anatomy, that he decided in his professional judgment that a cholangiogram was not necessary and that converting to an open procedure created an increased chance of complications It could also be inferred that Dr. Crow performed the surgery in the manner in which he was trained, and in doing so determined what he believed to be the cystic duct based upon visual cues, his experience and confidence level, and that unfortunately, the patient's injuries were a complication of operating on difficult pathology. The trier of fact could also infer that in a patient where the common duct is adherent to the gallbladder, the common duct must be cut to actually effectuate removal of the gallbladder.
 {¶ 26} Regardless of the inference the trier of fact makes, we find that evidence was presented that would allow the jury to infer something other than negligence occurred during the surgery on October 4, 2002. The issue in this case is whether Dr. Crow's conduct fell below the standard of care. There is no question that Dr. Crow cut the common bile duct twice, and as a result, Amanda Roberts suffered an injury. However, there is evidence of "two equally efficient and probable causes of the injury, one of which is not attributable to the negligence of the defendant."Jennings Buick, supra. Therefore, the rule of res ipsa loquitur does not apply and the jury should evaluate the issue of negligence without benefit of the inference res ipsa loquitur provides. See id.
 {¶ 27} Finally, this Court has long held that:
"The doctrine of res ipsa loquitur may in a proper case be invoked to supply some of the proof, but was never intended to exempt a plaintiff from the burden of proving negligence, or establishing, by evidence, circumstances which make negligence a proper and logical inference." Wyatt v. Pliskin (Oct 12, 1978), 9th Dist. No. 8861, at 6, citing Nanashe v. Lem Mon (1958), 162 N.E.2d 569, 573.
 {¶ 28} Based on the foregoing, the Roberts' second assignment of error lacks merit.
 III {¶ 29} The Roberts' first assignment of error is sustained. The Roberts' second assignment of error is overruled. The judgment of the trial court is reversed in part, affirmed in part, and remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
Carr, J. concurs.
Slaby, P.J. Dissents.
[1] The complaint was filed by Margie Roberts, individually and as the parent of Amanda Roberts.
[2] Appellants voluntarily dismissed Children's Hospital from the action on January 4, 2005. On January 12, 2005, Appellants voluntarily dismissed all claims against Robert L. Klein, M.D. 
Associates.
[3] In fact, Dr. Lobe testified on re-direct that the standard of care could be met in a variety of ways:
Q: Are there any number of ways that a physician complies with the standard of care?
A: Yes.
[4] Dr. Lobe insisted throughout the proceedings that "laying out" the anatomy was the standard of care and should be accomplished by contrast studies or opening up the patient. Dr. Crow disagreed and argued that the standard of care did not require opening the patient up. Upon being presented with a hypothetical where a cholangiogram was impossible, Dr. Lobe insisted that he would not proceed with the surgery without opening up the patient and dissecting the anatomy. Such an opinion is contradictory to the method employed by Dr. Crow.