DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, Frances Jones, et al., appeal from the judgment of the Lorain County Court of Common Pleas which granted summary judgment in favor of Appellees, Paul Birney, et al. This Court reverses.
 I. {¶ 2} On February 6, 1999, the decedent, Jake Jones ("Mr. Jones"), presented to the Allen Memorial Hospital emergency room with complaints of fever, chills, right abdominal pain, tenderness and constipation. The emergency room doctor ordered an x-ray which indicated right lower lobe pneumonia and a bowel abnormality. The emergency room doctor sought a consult with Appellee, *Page 2 
Dr. William Saxbe, a surgeon with Appellee, the Oberlin Clinic. Dr. Saxbe recommended that Mr. Jones be admitted for pneumonia. He also recommended an abdominal ultrasound and x-rays. The emergency room doctor did not act on the recommendations from Dr. Saxbe but rather, placed Mr. Jones under the care of Dr. Paul Birney, Mr. Jones' primary care physician. Dr. Birney ordered an ultrasound of Mr. Jones' right upper abdominal quadrant.
 {¶ 3} Upon reviewing the ultrasound and x-rays, it was determined that Mr. Jones was suffering from pneumonia. During the evening of February 10, 1999, Mr. Jones vomited a large amount of black coffee ground emesis. He became unresponsive and ultimately passed away. An autopsy was performed. The results indicated Mr. Jones' cause of death as "extensive bilateral pulmonary histoplasmosis with pneumonia" and a "small intestinal obstruction with severe distention, necrosis and terminal intestinal bleeding."
 {¶ 4} Appellants, Frances Jones, et al. ("Mrs. Jones")[1], refiled this medical malpractice/wrongful death action in May of 2004 against Dr. Birney, Dr. Saxbe and the Oberlin Clinic. The complaint alleged that Dr. Birney, Dr. Saxbe and the Oberlin Clinic were negligent in their medical care of Mr. Jones which caused his untimely death. The matter was set for trial in October 2005. However, shortly *Page 3 
before trial, Mrs. Jones' expert witness passed away. Trial was then rescheduled for August 28, 2006. On February 6, 2006, Dr. Saxbe filed a motion for summary judgment. Mrs. Jones' new expert, Dr. Syed Arif Ahmad, filed an expert report on February 15, 2006. Dr. Birney filed a motion for summary judgment on February 23, 2006. Because the report did not include any criticism of Dr. Birney, Mrs. Jones dismissed him with prejudice on April 14, 2006.[2] Mrs. Jones filed a brief in opposition to the summary judgment motions on May 23, 2006. On June 27, 2006, the trial court denied the motions for summary judgment. The trial court noted that the trial remained set for August 28, 2006.
 {¶ 5} Dr. Ahmad gave discovery deposition testimony on May 1, 2006 and trial deposition testimony on August 24, 2006. The trial court then continued the trial until February 20, 2007. The trial court set a new trial date of June 11, 2007. On March 19, 2007, Oberlin Clinic filed a motion for summary judgment. On March 22, 2007, the trial court granted the parties leave to file dispositive motions.
Dr. Saxbe filed a motion for summary judgment on March 29, 2007. In his motion, Dr. Saxbe asserted that there were no genuine issues of material fact *Page 4 
remaining and that Mrs. Jones was unable to establish causation even with the expert's testimony. On April 18, 2007, Mrs. Jones filed a brief in opposition. In the brief, Mrs. Jones asserted that Dr. Saxbe's failure to order the proper imaging study, a C.A.T. scan of Mr. Jones' abdomen, proximately resulted in the failure to diagnose his perforated appendix and obstructed bowel and that the failure to detect these conditions led to Mr. Jones' aspiration and death. Dr. Saxbe filed a reply brief on April 25, 2007. On May 1, 2007, the trial court granted summary judgment in favor of Dr. Saxbe and the Oberlin Clinic. The court held that there were no genuine issues of material fact regarding the proximate cause issue and that no conduct on the part of the Oberlin Clinic proximately caused Mr. Jones' death or took away any chance he had of surviving the illness.
 {¶ 6} Mrs. Jones filed a timely notice of appeal, raising a single assignment of error for our review.
 II. ASSIGNMENT OF ERROR "THE MOTIONS FOR SUMMARY JUDGMENT OF [DR. SAXBE AND THE OBERLIN CLINIC] WERE GRANTED IN ERROR AS GENUINE ISSUES OF MATERIAL FACTS EXIST AND [MRS. JONES] WILL BE ABLE TO ESTABLISH THAT THE CARE AND TREATMENT RECEIVED BY [MR. JONES] *Page 5 
DEVIATED FROM ACCEPTABLE STANDARDS AND RESULTED IN HIS DEATH."
 {¶ 7} In Mrs. Jones' sole assignment of error, she asserts that the trial court erred in granting summary judgment in favor of Dr. Saxbe and the Oberlin Clinic (hereinafter "Appellees"), as genuine issues of material fact exist and she can establish that the care and treatment Mr. Jones received deviated from acceptable standards and resulted in his death. We agree.
 {¶ 8} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 9} Pursuant to Civil Rule 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated;
 (2) the moving party is entitled to judgment as a matter of law; and
 (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 10} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. *Page 6 
56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 11} With regard to medical malpractice cases, the Ohio Supreme Court has held:
 "In order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more such particular things." Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, paragraph one of the syllabus.
Furthermore, "[p]roof of the recognized standards must necessarily be provided through expert testimony." Id. at 131-32.
 {¶ 12} In this case, the trial court's decision hinged on the lack of evidence of proximate causation. One is generally required to "prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence." Roberts v. Ohio Permanente Med. Group,Inc. (1996), 76 Ohio St.3d 483, 485. "An event is *Page 7 
probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue." Stinson v. England (1994),69 Ohio St.3d 451, paragraph one of the syllabus.
 {¶ 13} To establish proximate cause, Mrs. Jones was required to demonstrate with a reasonable degree of medical certainty that Dr. Saxbe deviated from acceptable care by not ordering a C.A.T. scan and that the failure to order a C.A.T. scan led to the failure to diagnose Mr. Jones' bowel obstruction and ruptured appendix, which proximately caused Mr. Jones' death. On this point, Mrs. Jones' expert, Dr. Ahmad, provided the following testimony.
 "Q: Okay. Doctor, based upon your review of all these medical records, the depositions, the X-ray studies and all of the materials that you've testified to here today, do you have an opinion to a reasonable medical certainty as to whether or not the care and treatment rendered to Jake Jones by Dr. Saxbe complied with acceptable medical standards?
 "A: I do.
 "Q: Okay. And what is your opinion?
 "A: My opinion is that it was below standard. I think that a CT scan should have been ordered in the emergency room and if a CT scan had been ordered, I think with reasonable certainty that the complication that occurred here would not have occurred."
 {¶ 14} Dr. Ahmad further testified that an ultrasound, the test Dr. Saxbe recommended after his initial evaluation of Mr. Jones, is not a very good x-ray to use in diagnosing a bowel obstruction. Dr. Ahmad explained that an ultrasound "may have picked up an abscess that was present, but because this was a retrocecal *Page 8 
appendix, it may have missed it as well." He explained that his opinion was not based on whether Dr. Saxbe obtained an ultrasound of Mr. Jones' right upper quadrant or a complete abdominal ultrasound. Rather, his opinion was based on the fact that, given the data that Dr. Saxbe reviewed, including the abdominal x-ray, after evaluating Mr. Jones, Dr. Saxbe should have ordered a C.A.T. scan.
 {¶ 15} Dr. Ahmad further testified that if a C.A.T. scan had been ordered, the C.A.T. scan would have shown that Mr. Jones had "perforated [his] appendix which formed an abscess." Dr. Ahmad explained that the failure to diagnose the perforated appendix ultimately led to Mr. Jones' aspiration and death. Dr. Ahmad explained the mechanics of the aspiration as follows:
 "The abscess then caused bowel obstruction, which caused distention of his small intestine. The contents in the small intestine and the stomach were not able to pass the point of obstruction. The blockage built up to the point where he vomited. I believe there was a note written after his cardiac event that he vomited greater than two liters of fluid. Some of that vomit was — was expelled and some of it, if not most of it, went into his lung and that caused an acute cardiac arrest.
 "Q: Okay. And that led to his death.
 "A: I believe — well, eventually he was resuscitated, but he also had evidence of sepsis, infection that had spread, and that could have been the result of the aspiration and/or the infection in the abdomen."
 {¶ 16} Dr. Ahmad opined that surgery should have been performed to drain the abscess and "if possible, the appendix should have been resected relieving the bowel obstruction." He further opined that Mr. Jones *Page 9 
"most likely * * * would have tolerated the surgery, he would not have aspirated, he would not have had an — the cardiac arrest from that and he would not have become sepctic because the infection would have been treated, so he would have survived this event. What he would have done long term, I don't know, but he certainly would have survived this event."
 {¶ 17} Dr. Ahmad also testified that "with the X ray findings [Dr. Saxbe] should have also recommended a nasogastric tube, which would have also prevented the aspiration[.]" In addition, he stated that even if Dr. Saxbe had determined that Mr. Jones was not a surgical candidate, he should have recommended drainage of the abscess which could have been accomplished without an operation. Dr. Ahmad ultimately concluded that Mr. Jones' death was preventable:
 "If the perforated appendix and abscess causing bowel obstruction was diagnosed earlier, prior to his episode of aspiration, it could have been prevented."
 {¶ 18} Thus, Dr. Ahmad specifically testified that Dr. Saxbe's failure to ascertain and treat the perforated appendix and abscess causing bowel obstruction proximately led to Mr. Jones' death.
 {¶ 19} Appellees counter, however, that Dr. Ahmad's testimony on the proximate cause issue fell short of establishing a prima facie claim of medical negligence resulting in Mr. Jones' death. More specifically, Appellees argue that Dr. Ahmad's testimony was speculative as to whether Dr. Saxbe's negligence caused Mr. Jones' death. Appellees specifically point to the following testimony: *Page 10 
"Q: And did the failure of Dr. Saxbe to order a CAT scan result in the death of Jake Jones?
 "* * *
 "A: I can say that the failure to order a CAT scan resulted in the patient suffering an aspiration event which eventually led to the death. Whether or not he would have died even if a CAT scan was ordered, I can't say, but it certainly could have prevented the aspiration."
 {¶ 20} Our sister courts have held that
 "`Once an expert properly states his professional opinion to a properly formed question as to probability, he or she has established a prima facie case as a matter of law. Erosion of that opinion due to effective cross-examination does not negate that opinion; rather it only goes to weight and credibility. Thus, it would not usually be a suitable instance for application of a directed verdict. The exception would be when the expert actually recants the opinion on cross.'" (Internal quotations omitted.) Heath v. Teich, 10th Dist. No. 03AP-1100, 2004-Ohio-3389, at ¶ 14, quoting Galletti v. Burns Internatl. (1991), 74 Ohio App.3d 680, 684.
 {¶ 21} Dr. Ahmad did not recant his testimony that "the failure to order a CAT scan resulted in the patient suffering from an aspiration event which eventually led to his death." Any erosion of that opinion through his statement that he cannot say whether Mr. Jones would have died from some other ailment even if a C.A.T. scan was ordered "does not negate that opinion; rather it only goes to weight and credibility."Heath, supra, at ¶ 14, quoting Galletti, 74 Ohio App.3d at 684. It is well established that "[t]he trial court is not permitted to weigh the evidence on the merits when reviewing a motion for summary judgment."Cordiano v. Consol. Rail Corp. (1993), 87 Ohio App.3d 398, 401. *Page 11 
See Dupler v. Mansfield Journal Co., Inc. (1980), 64 Ohio St.2d 116,121; Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7. "Rather, the court must evaluate the evidence, taking all permissible inferences and resolving questions of credibility in favor of the nonmoving party."Jacobs, 105 Ohio App.3d at 7.
 {¶ 22} Appellees also contend that Dr. Ahmad failed to state his opinion in terms of probability, as required by Roberts,76 Ohio St.3d at 485. Contrary to Appellees' assertion, the record reflects that Dr. Ahmad stated his opinion in terms of probability. The record reflects that when asked whether he had "an opinion to a reasonable medical certainty as to whether or not the care and treatment rendered to Jake Jones by Dr. Saxbe complied with acceptable medical standards", Dr. Ahmad testified that "if a CT scan had been ordered, I think withreasonable certainty that the complication that occurred here would not have occurred." Black's Law Dictionary defines "reasonable medical probability", which is also termed "reasonable medical certainty" as "a standard requiring a showing that the injury was more likely than not caused by a particular stimulus, based on the general consensus of recognized medical thought." Black's Law Dictionary (8th Ed.Rev. 2004) 1294. As Dr. Ahmad has, for all practical purposes, opined that Mr. Jones' injury was more likely than not caused by Dr. Saxbe's negligence in failing to order a C.A.T. scan, we find that his testimony complies with Roberts, 76 Ohio St.3d at 485. *Page 12 
 {¶ 23} Lastly, Appellees contend that Dr. Ahmad's testimony did not address the cause of Mr. Jones' death — histoplasmosis. However, the record reflects that Dr. Ahmad testified that Mr. Jones did not suffer from "a severe and debilitating form of histoplasmosis".
 "Q: Yes. From some of the defense experts it appears to be their opinions, and we'll hear about them later in the trial, that Mr. Jones suffered from a severe and debilitating form of histoplasmosis, am I correct in that?
 "A: That's correct.
 "Q: Do you find support for that in the records that you have reviewed?
 "A: No, I don't. I find evidence on his pathology report, autopsy that he had what appeared to be disseminated chronic histoplasmosis in his lungs, but if you actually read the emergency room report, he didn't report to the emergency room with any respiratory complaints. In fact, he had pulse oxygenation, which is a blood oxygen level, of ninety-eight percent on room air in the emergency room, which is completely normal. He was not in respiratory distress. And in fact, he was admitted to a normal floor bed in the hospital without any oxygen or any other respiratory support, so he was not in respiratory distress when he presented to the emergency room in the hospital."
 {¶ 24} As we stated above, the trial court cannot weigh evidence on the merits when evaluating a motion for summary judgment.Cordiano, 87 Ohio App.3d at 401. The trial court must consider all the permissible inferences and resolve issues in dispute in favor of the non-moving party. Jacobs, 105 Ohio App.3d at 7. *Page 13 
 {¶ 25} It appears from the trial court's opinion that the trial court erroneously weighed the evidence. In its findings of fact, the trial court stated that "[t]hough it is undisputed that Jones suffered a vomiting event, whether he also suffered an aspiration event isspeculative." [Emphasis added.] The court also concluded that "the pathologist could not confirm an aspiration event." The court drew these conclusions despite Dr. Ahmad's testimony that "the failure to order a CAT scan resulted in the patient suffering from an aspiration event which eventually led to his death" and the pathologist's statement that
 "Although the patient was described as having lower quadrant pneumonia, the entire lung tissue was dark reddish brown, poorly aerated and almost solid. At the time of the gross examination, this was felt to be due to aspiration of the intestinal contents andfj in part[,] that may still be true" [Emphasis sic]
 {¶ 26} The standard of review on appeal for an award of summary judgment is the same as that at the trial level in that we are required to construe the facts in a light most favorable to the non-moving party and resolve any doubt in favor of the non-moving party. Viock,13 Ohio App.3d at 12. Construing the evidence in a light most favorable toJones, the non-moving party, and considering all permissible inferences, we find that there is a genuine issue of material fact as to whether Dr. Saxbe's failure to order a C.A.T. scan caused Mr. Jones to suffer from an aspiration event which ultimately led to his demise.
 {¶ 27} Accordingly, we find that the trial court erred in granting summary judgment in favor of Appellees. Genuine issues of material fact remain regarding *Page 14 
whether Dr. Saxbe's failure to order a C.A.T. scan proximately caused Mr. Jones' death. Appellees have not met their initial burden of demonstrating the absence of a genuine issue of material fact regarding whether their alleged deviation from the acceptable standard of care proximately caused Mr. Jones' death. Dresher, 75 Ohio St.3d at 292-93. Mrs. Jones' sole assignment of error is sustained.
 III. {¶ 28} Mrs. Jones' sole assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 15 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. Costs taxed to Appellees.
CARLA MOORE FOR THE COURT
WHITMORE, J CONCURS
SLABY, J. DISSENTS
[1] Frances Jones is Mr. Jones' widow and executrix of the Estate of Jake Jones.
[2] In his expert report, Dr. Ahmad stated: "I do not feel Dr. Birney deviated from the standard of care in caring for patient Jake Jones. * * * Dr. Birney, being an internist, had to rely on Dr. Saxbe's expertise that this was not a surgical problem. Therefore, Dr. Birney treated the patient appropriately for a [sic] pneumonia and trusted Dr. Saxbe's assessment." *Page 1